# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-0643V
UNPUBLISHED

|  |  |
|---|---|
| DEBRA JUNO,<br><br>                 Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: November 2, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza<br>Vaccine; Shoulder Injury Related to<br>Vaccine Injury (SIRVA) |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On May 7, 2018, Debra Juno filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 10, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

After I issued my Ruling on Entitlement finding Petitioner entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $100,000.00 for her actual pain and suffering. (The parties have agreed that Petitioner is entitled to $815.00 in out-of-pocket expenses, and $4,585.00 in lost wages).

## I.    Procedural History

Initially, Respondent contested entitlement in this case, arguing that the onset of Petitioner's shoulder pain had not begun within the 48-hour window for a Table SIRVA claim. ECF No. 38. On September 13, 2021, I issued a ruling finding in favor of Petitioner on that issue, and ordered Respondent to file an amended Rule 4(c) report based on my finding. Thereafter, Respondent stated that "while preserving his right to appeal the Chief Special Master's September 13, 2021, finding that the onset of petitioner's right shoulder pain took place within 48 hours of her flu vaccination, respondent accepts this ruling as the law of the case for purposes of further proceedings before the Office of Special Masters." Respondent's Rule 4(c) Report at 5. ECF No. 48. On October 15, 2021, I issued a ruling finding that Petitioner was entitled to compensation. ECF No. 49.

The parties were unable to agree on an appropriate amount to award Ms. Juno for her pain and suffering, and agreed to brief the issue. ECF No. 54. On April 22, 2022, Petitioner filed her Brief in Support of Damages ("Mot."), and Respondent filed a Response on June 16, 2022 ("Opp.").[3] ECF Nos. 57, 59. I heard arguments from both parties during a Motions' Day Damages hearing held on October 28, 2022.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the petition, the parties' respective pre-hearing filings, in Respondent's Rule 4(c) Reports, and in the Findings of Fact issued on September 13, 2021.

In brief summary, Ms. Juno's past medical history was significant for hypothyroidism, restless leg syndrome, gastric reflux, and a hiatal hernia. Petitioner's Exhibit ("Ex.") 2 at 2. There is no history of shoulder complaints noted. Ex. 2 at 22-24.

Ms. Juno was 60 years old when she received a flu vaccine in her right shoulder on October 10, 2016, by a nurse at her primary care physician's ("PCP") office. Ex. 1 at 1; Ex. 7 at 8.[4] In her affidavit, Ms. Juno recalled that "[i]mmediately following the influenza vaccination, I began to develop pain in my right shoulder." Ex. 10 at 1, ¶2. She stated that

---

[3] No Reply brief was filed.

[4] Ms. Juno also received the Pneumovax 23 vaccine in her left deltoid during this visit, but this vaccine is not covered under the Vaccine Program. *Id*.

the nurse administering the vaccination was standing, while Ms. Juno was seated. Ex. 11 at 1, ¶3. Ms. Juno also stated in her affidavit that she was advised by her PCP's office to wait a week to see if her shoulder pain subsided. *Id*. at ¶ 6. When the pain did not subside, she contacted her PCP again and made an appointment for November 2, 2016. *Id*. at ¶7.

On November 2, 2016, 23 days after vaccination, Ms. Juno presented to Dr. Elham Siddiqui at Penn Internal & Family Medicine of Bucks County complaining of "worsening arm pain since getting flu and pneumonia vaccines." Ex. 2 at 36. Dr. Siddiqui diagnosed her with bilateral arm pain and myalgia. She was prescribed a steroid taper. *Id*. at 38.

By December 14, 2016, Ms. Juno was still experiencing pain in her right shoulder. She returned to her PCP stating that she "still [had] difficulty raising her arm, can't take shirt off", "aching, can't reach behind," "very sore to touch." Ms. Juno stated that she had tried steroid and anti-inflammatory medications to no avail. Ex. 2 at 32. On exam, she exhibited decreased range of motion of the right shoulder, tenderness, pain and decreased strength. *Id*. at 34. Dr. Siddiqui ordered an MRI. *Id*.

On December 21, 2016, Ms. Juno underwent an MRI of her right shoulder which demonstrated a "full thickness supraspinatus tear, partial bursal sided infraspinatus tear, and moderate osteoarthritis of the acromioclavicular joint." Ex. 2 at 64.

On January 11, 2017, Ms. Juno was examined by orthopedic surgeon, Dr. John McPhilemy, who noted that Ms. Juno "began to experience right shoulder symptoms following a flu shot she received on or about 10/10/2016. Symptoms have persisted over the past three months…" Ex. 5 at 6-7.  He recommended arthroscopic surgery to repair the tears, followed by a course of physical therapy. *Id*. at 7.

On January 20, 2017, Ms. Juno underwent a right shoulder arthroscopic shoulder repair. Ex. 3 at 9. The postoperative diagnoses included: (1) rotator cuff tear, right shoulder, (2) degenerative glenoid labrum tear, and (3) early osteoarthritis, right glenohumeral joint. *Id*. Five days later, on January 25, 2017, Ms. Juno was examined by Dr. McPhilemy who noted that Ms. Juno's incisions were healing and there were no signs of infection or deep vein thrombosis. Ex. 5 at 5. Ms. Juno had several post-operative appointments with Dr. McPhilemy on February 1, 8, and 27, 2017. *See generally* Ex. 3, 5.

On March 8, 2017, Ms. Juno underwent an initial physical therapy evaluation at Hand & Orthopedic Physical Therapy Associates. She was prescribed a course of therapy two (2) to three (3) times per week for four (4) weeks. Ex. 4.

On March 27, 2017, nine weeks after surgery, Dr. McPhilemy noted that Ms. Juno's pain was "slowly improving" although she was not yet pain free. Ex. 3 at 3. He recommended that Ms. Juno work with a physical therapist to improve her range of motion and to prevent adhesive capsulitis. *Id*.

By April 17, 2017, Dr. McPhilemy noted that Ms. Juno's range of motion "is improved to about 90% of normal, pain is improved and strength is about 85% of normal." Ex. 3 at 2. Dr. McPhilemy recommended that Ms. Juno continue with physical therapy for another two weeks. *Id*.

At her May 3, 2017 appointment with Dr. McPhilemy, Ms. Juno's right shoulder had improved but she was not pain free. Ex. 3 at 1. Ms. Juno attended post-surgical physical therapy from March 27, 2017, to May 31, 2017. *See generally* Exs. 3, 4. She was discharged from physical therapy on May 31, 2017, to a home exercise program. Ex. 3 at 5.

### III.    The Parties' Arguments

#### a.  Petitioner

Ms. Juno seeks an award of $110,000.00 as compensation for her pain and suffering. Mot. at 1. She notes that she reported her pain to a medical provider just 23 days after vaccination. *Id*. at 8. After her pain failed to improve and an MRI showed a full thickness supraspinatus tear and a partial bursal sided surface tear, Petitioner underwent arthroscopic surgery. *Id*. Petitioner attended a total of 19 post-operative physical therapy ("PT") sessions and seven follow-up appointments with her orthopedist. *Id*. She also underwent seven and a half months of active treatment after vaccination, and still complains of intermittent aching pain and she continues to have difficulty lifting heavy items. *Id*.

During the hearing and in her brief, Petitioner discussed several prior SIRVA cases[5] that all involved injured claimants with mild to moderate shoulder injuries which required surgical intervention, and all had similar physical therapy sessions. Thus, Petitioner argued that an award of $110,000.00 was reasonable and appropriate given that her circumstances were comparable. Mot. at 5-9.

---

[5] The cases cited by Petitioner are *Cates v. Sec'y of Health & Human Servs.*, No. 18-277, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020), *Slugo v. Sec'y of Health & Human Servs.*, No. 19-635V, 2022 WL 627782 (Fed. Cl. Spec. Mstr. Jan. 31, 2022); *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018); *Wilt v. Sec'y of Health & Human Servs.*, No. 18-446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020).

### b.  Respondent

Respondent maintains that a slightly lower pain and suffering award of $80,000.00 is appropriate given the overall nature of Ms. Juno's injury. Opp. at 15. Respondent argued that while this case involves surgical intervention, the records document a very short period of overall treatment, little treatment in the first two months after vaccination, and no steroid injections or PT prior to surgery. *Id*.

Respondent notes that SPU petitioners have been awarded less than $100,000.00, in a number of SIRVA cases involving surgery. For example, in *Shelton v. Sec'y of Health & Human Servs.*, No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021), the relevant petitioner sought "consistent" care both before and after surgery that included three steroid injections, significant PT both before and after shoulder surgery, and fluctuating levels of pain. Opp. at 16. While the *Shelton* petitioner delayed seeking treatment for nearly five months after vaccination, that petitioner's overall course was lengthier than here, justifying a lower award in this case. *Id*.

At the hearing and in her brief, Respondent also attempted to distinguish the cases cited by Petitioner, maintaining that the petitioners in each of those cases sought much more pre-surgery care and had longer courses of overall treatment. *Id*. at 16-17. Accordingly, Ms. Juno's award should be significantly lower than the SIRVA cases cited by Petitioner. *Id*. at 18-20.

### IV.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional

distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V.     Appropriate Compensation in this SIRVA Case

### a. Awareness of Suffering

Neither party disputes that that Ms. Juno had full awareness of her suffering, and I find that fact is supported by the record evidence.

### b. Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Juno's medical records and affidavits provide a description of the pain she experienced throughout the duration of her injury. As noted, Ms. Juno was seen by her PCP quickly, just 23 days after vaccination, where she reported worsening pain in her right shoulder since receiving her flu vaccination. Ex. 2 at 36. She was prescribed two courses of steroid treatment, but she continued to complain of shoulder pain for more than two months after vaccination. Ex. 2 at 32. An MRI revealed several tears in her right deltoid, including a full thickness supraspinatus tear and partial bursal infraspinatus tear, as well as mild atrophy, tendinopathy and moderate arthritis of the acromioclavicular joint. Ex. 2 at 64-65. She was referred to an orthopedist, who after conducting a physical examination and

reviewing the recent MRI, suggested several treatment options, including surgery. Ex. 5 at 6-8.  Petitioner elected surgery to repair the tears shown on the MRI. Ex. 9 at 13-14. After surgery, she reported constant pain ranging from a 4/10 to 10/10. Ex. 3 at 18. She attended 19 post-operative physical therapy sessions, and approximately 5 months after surgery, showed significant improvement. Ex. 4 at 3-6. I note that Ms. Juno stopped seeking treatment for her SIRVA within seven months of vaccination, and there is no information in her affidavits specifically describing the pain and suffering she endured as a result of her injury.

Although both parties cited to prior SIRVA cases in support of their proposed awards that were reasonably comparable, I believe this case is most similar to *Cates v. Sec'y of Health & Human Servs.,* No. 18-0277, 2020 WL 0751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00) cited by Petitioner. The *Cates* petitioner had a course of treatment very similar to Ms. Juno's – treatment by her PCP, one MRI, 19 total physical therapy sessions, and a cessation of treatment approximately eight months after vaccination. *Id.* at 1-4. The only material differences between that treatment course and Ms. Juno's were that Ms. Cates received a steroid injection and attended nine occupational therapy sessions prior to surgery and 10 post surgery. Overall, Ms. Juno had a very similar injury course, but I will award a slightly lesser amount than what the *Cates* petitioner received, to account for Ms. Juno's shorter overall treatment course and the lesser amount of treatment she received prior to surgery.

I also found the *Shelton* case cited by Respondent to be a good comparable, demonstrating that a six-figure award is not always warranted in SIRVA cases involving surgery. At the same time, however, *Shelton* involved some particularly egregious factors not evident here, like a lengthy delay in seeking initial post-vaccination treatment. In cases where there is an obvious delay between the time an individual receives a vaccination and when the individual seeks care for the related injury, the injury is likely to be less severe. This is especially the case when the individual is seen during intervening unrelated medical visits and could have reported the injury or symptoms during those visits. These types of delays are factored into an award for damages.

Overall, Ms. Juno's SIRVA was on the moderate side, but she did undergo surgical intervention. Her overall treatment course was not very long, approximately six to eight months, but Respondent's proposed award is still too low. However, Ms. Juno's treatment, especially pre-surgery, was not extensive and her overall recovery was quick. Thus, some discount in the award proposed by Petitioner is warranted.

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I

find that **$100,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c.  Other Expenses

As noted, the parties agree that Petitioner has established the amounts sought for out-of-pocket medical expenses ($815.00), and for lost wages ($4,585.00), for a total of $5,400.00. Opp. at 2.

## VI.    <u>CONCLUSION</u>

In light of all of the above, the I award **Petitioner the lump sum payment of <u>$105,400.000</u> (consisting of $100,000.00 for her actual pain and suffering, $815.00 for out-of-pocket medical expenses, and $4,585.00 in lost wages) in the form of a check payable to Petitioner <u>Debra Juno</u>.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.